IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

INNOVATIVE THERAPIES, INC. :
:
v. : Civil Action No. DKC 12-3309
:
MARK S. MEENTS :
:

**MEMORANDUM OPINION**

Presently pending and ready for review in this diversity of citizenship case is the motion filed by Plaintiff/Counter-Defendant Innovative Therapies, Inc. ("ITI") seeking dismissal of Defendant/Counter-Plaintiff Mark S. Meents's counterclaim or, in the alternative, to bifurcate and stay further proceedings relating to the counterclaim. (ECF No. 11). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Meents's counterclaim will be dismissed without prejudice to his right to file an amended counterclaim within fourteen (14) days, and ITI's alternative request to stay or bifurcate will be denied without prejudice to renewal.

**I. Background**

ITI is a Delaware corporation engaged in the manufacture and distribution of specialized wound care products and devices. Meents is a former ITI employee. On October 4, 2012, Meents

filed a nine-count shareholder's derivative action on behalf of ITI against the company's chief executive officer, Richard C. Vogel, in the Circuit Court for Montgomery County, Maryland, captioned *Innovative Therapies, Inc. v. Richard Vogel*, No. 369279V ("the State Court Action"). (ECF No. 11-3, Ex. 11). In the State Court Action, Meents alleges that Vogel, in his capacity as an officer and director of ITI, has acted improperly in a number of ways, including by wrongfully taking ITI's intellectual property for his personal gain and benefit; by obligating ITI to pay unnecessary licensing fees to a third-party company owned by Vogel; by causing ITI to issue Vogel an unauthorized dividend distribution in an amount that has "no relationship to the number of shares of stock [Vogel] could legitimately own in the company"; and by possibly causing ITI to issue shares to Vogel without adequate consideration. (*See generally id.*). In Counts VI-VII of the State Court Action, Meents prays for an order directing Vogel to return to ITI all dividend distributions to which he was not entitled, along with all stock he unlawfully caused to be issued. (*Id.* ¶¶ 49-55).

On November 12, 2012, ITI filed the instant lawsuit against Meents, seeking a declaration that Meents forfeited his shares of ITI stock when he was terminated for cause on July 31, 2012. (ECF No. 1). On November 19, 2012, Vogel moved to dismiss or, in the alternative, to stay the State Court Action,

arguing that the outcome of this action – and specifically, any determination as to whether Meents forfeited his shares upon termination – "will be dispositive of Meents's standing" to pursue a shareholder's derivative action under Delaware law. (ECF No. 11-3, Ex. 12). On December 17, 2012, Meents and Vogel agreed to the entry of a consent order in the State Court Action that stayed all proceedings pending the disposition of this lawsuit. (ECF No. 11-3, Ex. 13).

On December 20, 2012, Meents filed an answer to ITI's complaint (ECF No. 7) and a counterclaim (ECF No. 8). In his counterclaim, Meents alleges that, at the time ITI commenced operations in 2007, the company had both voting and non-voting stock, although all shareholders had the same rights to dividends and distributions. (*Id.* ¶ 7). According to Meents, ITI issued 4,000 voting shares to Vogel. ITI also issued 4,000 non-voting shares to both Meents and Vogel. In August 2008, ITI issued an additional 1,000 non-voting shares to an Ohio company in exchange for good and valuable consideration. In September 2008, after two original ITI shareholders left the company, their non-voting shares were reallocated, bringing Vogel's non-voting shares to 7,000, and Meents's to 5,500.

After September 2008, Meents purportedly never received any notice from ITI of further shareholder adjustments or of any additional issuance of stock. Meents also asserts that, upon

information and belief, no "legitimate" ITI Board of Directors has authorized the issuance of additional shares, nor has the company "received good and valuable consideration for the same." (ECF No. 8 ¶ 10). Meents therefore alleges that, as of August 2011, only 26,500 total shares of ITI stock should have been outstanding. As between Meents and Vogel, Meents alleges that he owned 5,500 shares, while Vogel owned 11,000 shares.

Yet, on August 5, 2011, ITI allegedly filed an "Amended and Restated Certificate of Incorporation," through which the company purportedly accomplished two things. (*Id.* ¶ 11). First, ITI increased the total numbers of its shares to 270,000. Second, ITI created a single class of common stock, eliminating any distinction between voting and non-voting shares. Then, for the calendar year of 2011, Meents received a dividend of $24,750, while Vogel received a dividend in excess of $1 million – an amount that, according to Meents, is disproportionate to Vogel's legitimate ownership stake in ITI. Meents therefore alleges that ITI, acting through Vogel, must have issued numerous additional stock certificates to Vogel at some point after September 2008 without consideration, without adequate consideration, and without conducting meetings of directors acting in the best interests of the company, thereby "unlawfully dilut[ing] the shares held by Meents and other shareholders." (*Id.* ¶ 16).

Based on these allegations, Meents asserts three counts in his counterclaim. In Count One, Meents seeks a judgment declaring that ITI did not properly authorize the issuance of any stock after September 2008, nor did it receive adequate consideration for such stock, meaning that Meents's 5,500 shares of ITI stock represent the "same proportionate share of equity in the company as they did" in September 2008. (*Id.* ¶¶ 13-21). In Count Two, Meents seeks $600,000 in money damages based on ITI's alleged breach of contract by failing to issue Meents a dividend for calendar year 2011 that was proportional to his actual equity stake in the company. (*Id.* ¶¶ 22-25). In Count Three, Meents seeks (1) an accounting of all dividends paid to Vogel as a shareholder and (2) a judgment in favor of Meents and against ITI "in such amount as will proportionately equalize the dividends paid to Vogel and Meents, as well as ITI's other shareholders." (*Id.* ¶¶ 26-29).

On January 24, 2013, ITI filed a motion to dismiss Meents's counterclaim pursuant to Fed.R.Civ.P. 12(b)(6). (ECF No. 11). ITI alternatively seeks dismissal pursuant to Fed.R.Civ.P. 12(b)(1) for lack of standing, or to stay or bifurcate further proceedings relating to Meents's counterclaim pending a determination as to whether he has standing to pursue a derivative action. (*See id.*). Meents filed a response in opposition (ECF No. 15), and ITI replied (ECF No. 16).

**II. Standard of Review**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S.

6

at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

**III. Analysis**

In its motion, ITI contends that Meents's counterclaim is, at bottom, a derivative action that is duplicative of certain counts asserted in the State Court Action and that is subject to dismissal for failing to satisfy the pleading requirements of Fed.R.Civ.P. 23.1. (ECF No. 11, at 4-9). ITI further argues that, even if the counterclaim did comply with Rule 23.1, its merits cannot be addressed until it is determined, as a factual matter, whether Meents is a current ITI shareholder who has standing to pursue a derivative action – an issue that turns on whether ITI had adequate cause to terminate Meents. (*Id.* at 9-

7

11).[1]  ITI thus alternatively asserts that all proceedings regarding Meents's counterclaim should be stayed pending adjudication of the claims asserted in its complaint.  (*Id.*).  Each of these arguments will be addressed, in turn.[2]

**A. In His Counterclaim, Meents Asserts Causes of Action that Are Exclusively Derivative in Nature.**

To determine whether a claim is derivative or direct under Delaware law, two questions must be answered:  "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?"  *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,

---

[1] Under Delaware law, a plaintiff pursuing a derivative claim must satisfy both the "contemporaneous ownership" and "continuous ownership" requirements. *See Lewis v. Anderson*, 477 A.2d 1040, 1046 (Del. 1984).  In other words, the plaintiff "must not only be a stockholder at the time of the alleged wrong and at [the] time of commencement of suit but . . . must also maintain shareholder status throughout the litigation." *Id.; cf.* Fed.R.Civ.P. 23.1 (reflecting the contemporaneous ownership test by requiring a derivative plaintiff to allege that he "was a shareholder or member at the transaction complained of" and reflecting the continuous ownership test by limiting the rule's applicability to derivative actions brought by "one or more *shareholders*" (emphasis added)).

[2] ITI also presents evidence in an effort to contradict certain factual averments made by Meents in his counterclaim regarding ITI's history of stock issuance. (*See* ECF No. 11-1, at 1-4; ECF No. 11-3).  Because ITI's motion is being analyzed pursuant to Rule 12(b)(6), such evidence will not be considered at this time.

845 A.2d 1031, 1033 (Del. 2004).[3]  Thus, in order to bring a direct claim against a corporation, a stockholder must "demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation."  *Id.* at 1039.  In deciding whether a claim is direct or derivative under the *Tooley* standard, the court must "look at the nature of the wrong alleged, not merely at the form of words used in the complaint."  *In re Syncor Int'l Corp. S'holders Litig.*, 857 A.2d 994, 997 (Del.Ch. 2004).

Here, the gravamen of Meents's counterclaim is that ITI, acting without the authorization of a disinterested Board of Directors, improperly issued additional stock certificates to Vogel without adequate consideration, which had the result of diluting the value of Meents's shares.  "Equity dilution claims are typically viewed as derivative under Delaware law."  *Feldman v. Cutaia*, 956 A.2d 644, 655 (Del.Ch. 2007), *aff'd*, 951 A.2d 727 (Del. 2008).  As explained by the Delaware Supreme Court, where a corporation allegedly overpaid for an asset by issuing stock

---

[3] The parties appear to agree that, because ITI is a Delaware corporation and because "the direct action vs. derivative action question involves an issue of substantive corporate law, rather than a procedural issue," Delaware law applies.  *Sykes v. Meyler*, 453 F.Supp.2d 936, 941 (E.D.Va. 2006) (citing *Bagdon v. Bridgestone/Firestone, Inc.*, 916 F.2d 379, 382-83 (7th Cir. 1990)).

9

without adequate consideration, "the corporation is both the party that suffers the injury (a reduction in its assets or their value) as well as the party to whom the remedy (a restoration of the improperly reduced value) would flow." *Gentile v. Rossette*, 906 A.2d 91, 99 (Del. 2006). Accordingly, "any dilution in value of the corporation's stock is merely the unavoidable result (from an accounting standpoint) of the reduction in the value of the entire corporate entity, of which each share of equity represents an equal fraction." *Id.*

Despite this precedent, Meents maintains that his claim is direct in nature because ITI's alleged issuance of additional stock to Vogel caused him personal injury, as reflected by the disproportionately small dividend he received for 2011. According to Meents, "it is Meents, not the company, who is entitled to recover the larger dividends for 2009, 2010, and 2011" if he is able to establish that an improper dilution occurred. (ECF No. 15-1, at 7). This argument is an ineffective attempt to recast the injury allegedly suffered by ITI into a claim by Meents for individualized damages. As observed by the *Feldman* court, "[t]he mere fact that the alleged harm is ultimately suffered by, or the recovery would ultimately inure to the benefit of, the stockholders does not make a claim direct under *Tooley*." *Feldman*, 951 A.2d at 733. Rather, "[i]n order to state a direct claim, the plaintiff must have suffered

10

some individualized harm not suffered by all of the stockholders at large." *Id.* Here, however, Meents affirmatively alleges that, by virtue of Vogel's actions, *all* shareholders suffered a dilution in the economic value of their shares. (*See, e.g.*, ECF No. 8 ¶ 16). Thus, Meents's counterclaim is derivative in nature, as proving that Meents suffered a personalized injury is necessarily contingent upon first establishing that ITI, as a whole, suffered improper dilution.

In some circumstances, of course, a claim can have a dual character, meaning that a plaintiff can elect to sue either derivatively or individually. *See Carsanaro v. Bloodhound Techs., Inc.*, --- A.3d ----, 2013 WL 1104901, at *28 (Del.Ch. Mar. 15, 2013). For example, in *Gentile* – a case that neither party cites in their briefs – the Delaware Supreme Court recognized that a particular "species of corporate overpayment claim" can be both derivative and direct where:

> (1) a stockholder having majority or effective control causes the corporation to issue 'excessive' shares of its stock in exchange for assets of the controlling stockholder that have a lesser value; and (2) the exchange causes an increase in the percentage of the outstanding shares owned by the controlling stockholder, and a corresponding decrease in the share percentage owned by the public (minority) shareholders.

*Gentile*, 906 A.2d at 100. The court explained that such a claim is derivative "[b]ecause the means used to achieve that result

is an overpayment (or 'over-issuance') of shares to the controlling stockholder," such that "the corporation is harmed and has a claim to compel the restoration of the value of the overpayment." *Id*. At the same time, however, "[a] separate harm also results: an extraction from the public shareholders, and a redistribution to the controlling shareholder, of a portion of the economic value and voting power embodied in the minority interest." *Id.* In such cases, "the public shareholders are harmed, uniquely and individually, to the same extent that the controlling shareholder is (correspondingly) benefited" and are therefore "entitled to recover the value represented by that overpayment — an entitlement that may be claimed by the public shareholders directly and without regard to any claim the corporation may have." *Id.*

Because Meents arguably alleges that Vogel is ITI's controlling shareholder and that Vogel caused ITI to issue him stock without adequate consideration, *Gentile* appears to be somewhat analogous. The Delaware Supreme Court has emphasized, however, that the exception established by *Gentile* is limited to situations involving "transactions that resulted in an improper transfer of *both* economic value *and* voting power from the minority stockholders to the controlling stockholder." *Feldman*, 951 A.2d at 732, n.26 (emphases added). Here, Meents's allegations rest solely on a purported loss in the economic

value of his ownership stake rather than any loss of voting power. Indeed, Meents's own allegations establish that he did not actually possess any voting rights prior to ITI's filing of its second Amended and Restated Certificate of Incorporation – a transaction that Meents alleges may not have legal effect given the "unlawful actions orchestrated by Vogel in connection with the ITI stock." (ECF No. 8 ¶ 18). Accordingly, Meents's counterclaim does not appear to fit within the narrow "transactional paradigm" identified by the *Gentile* court. Rather, his causes of actions mirror those asserted in Counts VI-VII of the State Court Action and are, as pleaded, exclusively derivative in nature.[4]

---

[4] Because the causes of action asserted by Meents in his counterclaim here are substantively identical to the derivative claims he asserts in Counts VI-VII of the State Court Action, Meents's attempt to characterize his counterclaim as compulsory under Fed.R.Civ.P. 13(a) also fails. Pursuant to Rule 13(a)(1), "[a] pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Assuming, *arguendo*, that Meents's counterclaim meets these requirements in the first instance, it would still come within the explicit exception set forth in Rule 13(a)(2)(A), which applies if, at the time the action was commenced, "the claim was the subject of another pending action[.]"

### B. Meents's Counterclaim Fails to Comply with Fed.R.Civ.P. 23.1.

Because Meents's counterclaim is derivative in nature, it must comply with Rule 23.1(b) of the Federal Rules of Civil Procedure. Among other requirements, Rule 23.1(b) mandates that the complaint in a shareholder's derivative action be verified and "state with particularity":

> (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and
>
> (B) the reasons for not obtaining the action or not making the effort.

Fed.R.Civ.P. 23.1(b)(3). The purpose of the so-called demand requirement reflected in Rule 23.1 is to allow "the corporate machinery to self-correct problems and to safeguard against frivolous lawsuits." *Raul v. Rynd*, --- F.Supp.2d ----, 2013 WL 1010290, at *4 (D.Del. Mar. 14, 2013) (citing *Ryan v. Gifford*, 918 A.2d 341, 351 (Del.Ch. 2007)). Because Rule 23.1 is a procedural requirement that "speaks only to the adequacy of the shareholder representative's pleadings," Delaware law governs what constitutes a demand and when the demand requirement should be excused. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 97 (1991).

In Delaware, the demand requirement may be excused when it is clear that making a demand would be futile. *See Aronson v.*

14

*Lewis*, 473 A.2d 805, 815 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). In order to excuse the demand requirement, a derivative complaint must allege particularized facts creating a "reasonable doubt" either that: (1) the directors were disinterested and independent; or (2) the challenged transaction was the product of a valid exercise of business judgment. *Aronson*, 473 A.2d at 815; *see also Brehm*, 746 A.2d at 256. If either prong is satisfied, the demand requirement is excused. *See In re Intel Corp. Derivative Litig.*, 621 F.Supp.2d 165, 170 (D.Del. 2009).

As ITI observes in its motion to dismiss, Meents's counterclaim fails to satisfy Rule 23.1's requirements in a number of respects. First, the counterclaim is signed by Meents's attorneys and is not verified. (*See* ECF No. 8, at 7-8). Second, the counterclaim also does not mention any demand by Meents on ITI's Board of Directors, nor does it offer any explanation for not making such a demand. Meents's allegations are also insufficient to establish demand futility under either prong of *Aronson*. First, the counterclaim is devoid of particularized allegations to rebut the presumption under Delaware law that ITI's Board of Directors is disinterested and independent. Indeed, other than Vogel, Meents does not even identify the directors of ITI, let alone conduct a "director-by-director analysis" to show that a majority of the Board "was

15

incapable, due either to a material personal interest or domination and control, of objectively evaluating a demand." *Raul*, 2013 WL 1010290, at *10. Second, Meents also fails to allege with particularity any facts that rebut the presumption that the challenged transactions (*i.e.*, ITI's alleged issuance of additional stock to Vogel and distribution of dividends) were anything but the product of reasoned business judgment by ITI's Board of Directors. It simply is not enough to allege, in a conclusory manner and only upon information and belief, that such transactions were undertaken at Vogel's direction and either without formal meetings of ITI's Board of Directors or without the approval of a disinterested Board of Directors.

Accordingly, ITI's motion will be granted to the extent it seeks dismissal of Meents's counterclaim for failure to state a claim. Based on a review of the complaint filed by Meents in the State Court Action (ECF No. 11-3, Ex. 11 ¶¶ 21-25), however, it appears that Meents may be able to rectify these pleading deficiencies. Accordingly, the counterclaim will be dismissed without prejudice to Meents's right to file an amended counterclaim within fourteen (14) days that complies with the requirements of Rule 23.1 and otherwise states a claim under Delaware law.

Finally, that portion of ITI's motion seeking a stay or bifurcation of proceedings relating to Meents's counterclaim

will be denied without prejudice to renewal if and when Meents elects to file an amended counterclaim.

## IV. Conclusion

For the foregoing reasons, the motion to dismiss counterclaim or, in the alternative, to bifurcate and stay further proceedings concerning counterclaim filed by Plaintiff/Counter-Defendant Innovative Therapies, Inc., will be granted in part and denied in part. A separate Order will follow.

<pre>
                         /s/
          DEBORAH K. CHASANOW
          United States District Judge
</pre>